

**VHGI HOLDINGS dba LILY GROUP**
Summary of Terms and Conditions
For Senior DIP Credit Facility
9/20/13

*THESE PROPOSED TERMS AND CONDITIONS ARE PROVIDED FOR DISCUSSION PURPOSES ONLY AND DO NOT CONSTITUTE AN OFFER, AGREEMENT OR COMMITMENT TO LEND. THE ACTUAL TERMS AND CONDITIONS UPON WHICH REICH BROTHERS, LLC MIGHT EXTEND CREDIT TO THE BORROWER ARE SUBJECT TO SATISFACTORY COMPLETION OF DUE DILIGENCE, CREDIT COMMITTEE APPROVAL, SATISFACTORY REVIEW OF DOCUMENTATION AND SUCH OTHER TERMS AND CONDITIONS AS ARE DETERMINED BY REICH BROTHERS, LLC AND ITS COUNSEL.*

| | |
|---|---|
| **Borrower:** | VHGI Holdings, LLC and its subsidiaries (collectively, the "Borrower" or the "Company".) |
| **Lender:** | Reich Brothers, LLC ("Lender"). |
| **Credit Facility:** | Up to $2,500,000 Debtor-in-Possession term loan to be funded in installments, based upon an opening Net Liquidation Value ("NLV") appraisal of the Borrower's (i) owned equipment (above and below ground)and rolling stock at close ("Equipment"); (ii) owned coal, mineral and all other reserve deposits, whether harvested or in-ground ("Mineral Reserves"); (iii) owned inventory and raw materials ("Inventory"); (iv) owned real property at close ("Real Property"); and (v) owned intellectual property, permits, licenses and patents at close ("IP"). |
| **Purpose:** | To finance (i) the costs associated with Borrower's chapter 11 bankruptcy filing; and (ii) the maintenance of Borrower's assets while the Borrower is marketed for sale. |
| **Maturity:** | Ninety (90) days from the date of mutual execution and delivery of the Loan Documents approving the Loan. |
| **Security:** | The Credit Facility will be secured by a 1st and only security position on all of the Borrowers' assets and capital stock, including Borrower's present and future Equipment, Rolling Stock, fixtures, Inventory, Mineral Reserves, tooling, accounts receivable, Real Property and IP, including, but not limited to, all trade names, trademarks, patents, copyrights, licenses, permits, goodwill and customer lists and proceeds. |

EXHIBIT
B



| | |
|---|---|
| **Borrowing Base:** | At no time shall outstanding amounts under the Credit Facility exceed 60% of the NLV of the Equipment, Inventory, Reserves and Real Property; provided that additional equipment of equal or greater value may be substituted for all or part of the Equipment subject to the satisfaction of certain conditions. |
| **Commitment Fee:** | One Hundred Twenty Five Thousand Dollars ($125,000) payable at the earlier of closing or commitment. |
| **Current Pay Interest:** | The greater of (i) The "LIBOR" rate published in the Wall Street Journal plus 8.0% per annum, payable monthly in arrears, or (ii) 14.25% per annum, payable monthly in arrears out of the interest escrow. The aggregate amount of the Current Pay Interest will be escrowed for the term of the Credit Facility and paid contemporaneously with the Exit Fee. |
| **Exit Fee:** | One Hundred Twenty Five Thousand Dollars ($125,000) payable upon maturity. |
| **Amortization:** | The loan will not be amortized. |
| **Extensions:** | The loan may be extended for one (1) thirty (30) day period upon written notification and payment of an extension fee in the amount of $125,000. At Borrower's option, the extension fee can be added to and paid contemporaneously with the Exit Fee. |
| **Payment of Fees** | Other than the Deposit defined below, at Borrower's option, all of the Fees, can be paid out of the Credit Facility proceeds upon Closing. Notwithstanding the foregoing, Current Pay Interest will be paid contemporaneously with the Exit Fee. |
| **Financial and Other Covenants:** | Periodic inspections, updated NLV appraisals and reporting TBD.<br>Other covenants TBD |
| **Conditions Precedent:** | Closing shall be conditioned upon satisfaction of the following conditions precedent and other conditions customary to transactions of this type, or reasonably required by the Lender. |

1. Demonstration of adequate liquidity to fund (i) the expenses of the sale efforts; and (ii) the Company over the next 6 months.

2. Liens on all of the Borrower's collateral shall have been filed and otherwise perfected to the satisfaction of the Lender, including but not limited to all UCC filing, warehouseman agreements and landlord agreements.



3. Satisfactory completion of due diligence, including, without limitation, a satisfactory review by the Lender of the following items:

    - Background checks on senior management and the ownership group.
    - Appraisal of the Equipment, Mineral Reserves, Real Property and IP listed on Exhibit A satisfactory to the Lender. The Lender will require, in its sole discretion, that said appraiser co-invest in the Credit Facility.
    - Financial projections and marketing plan to sell the business in the chapter 11 proceeding.

4. All necessary consents and approvals to the financing shall all have been obtained.

5. Completion of legal due diligence investigation by the Lender's counsel, with results satisfactory to the Lender and its counsel.

6. Preparation, execution and delivery of definitive documentation satisfactory to the Lender. Documentation shall contain representations, covenants, events of default, expense reimbursement, and indemnification provisions for the benefit of the Lender customary for transactions of this size, type, and purpose.

7. The Lender shall have received (i) reasonable and customary opinions of counsel to the Borrower as to the transactions contemplated hereby which opinions are satisfactory to the Lender, (ii) a satisfactory solvency opinion, and (ii) such corporate resolutions, certificates and other documents as the Lender shall reasonably request.

8. Due diligence costs are estimated to be Fifty Thousand Dollars ($50,000) and will be paid out of the Loan on Closing. The expenses include: $25,000 for documentation, $15,000 for credit review and $10,000 for appraisals.

9. No material misstatements in or omissions from the materials previously furnished to the Lender for its review. The Lender must be satisfied that any financial statements and projections delivered to it fairly represent the business and financial condition of the Borrower; and that there has been no material adverse change in the assets, business, financial condition, income or prospects of the Borrower since the date of the most recent financial information delivered to the Lender.



10. The absence of any litigation or other proceeding the result of which might have a material adverse effect on the Borrower.

11. The absence of any default of any material contract or agreement of the Borrower or any of its subsidiaries.

12. The proposed financing is subject to the condition that no material changes in governmental regulations or policies affecting the Borrower or Lender involved in this transaction occur prior to the closing date.

13. Borrower will enter into an Auction Services Agreement provided by Lender, which Agreement will be filed with the Bankruptcy Court administering Borrower's chapter 11 bankruptcy case. The Auction Services Agreement will be approved pursuant to section 327 and 363 of the Bankruptcy Code and will be in full force and effect in the event Borrower defaults on the Loan.

**Guarantors:**  The principal owners of the Company will provide a performance collection guarantee for the amount of the credit facility.

**Expenses:**  Legal, appraisal, commercial finance examination (field audit), and any other out of pocket expenses of the Lender will be paid by the Borrower. Lender's customary Due Diligence Deposit of $25,000 will be paid on the mutual execution and delivery of this Term Sheet. All other expenses will be paid out of the Closing Proceeds. Any remaining balance, except as provided below, will be returned to the Borrower.

In the event the Lender is prepared to issue a commitment letter or close the transaction on substantively the terms and conditions contained herein, and the Borrower chooses not to proceed, the Due Diligence Deposit will be immediately due and owing.

**Expiration:**  This letter shall expire on September 26, 2013, if prior to such date the Borrower has not accepted this letter by returning a signed copy to the Lender.



Please note that this letter, except with regard to the Expenses provisions set forth above, is not a binding commitment of Borrower or Lender, nor does it define all of the terms and conditions of the financing, but is a framework upon which the documentation for this transaction shall be structured, and is a basis for further discussion and negotiation of the terms as may be appropriate.

Sincerely,

**REICH BROTHERS, LLC**

**By:** *[signature]*
_____
Adam M. Reich, Co-CEO

**AGREED & ACCEPTED**

**VHGI HOLDINGS, LLC**

**By:**_____
      P. Richard Risinger

Its: Chairman & CEO

---