SO ORDERED: October 2, 2013.

_____
**Frank J. Otte**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LILY GROUP, INC. | ) | Case No. 13-81073-FJO-11 |
| | ) | |
| Debtor. | ) | Hon. Frank J. Otte |

**ORDER (A) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL ON AN INTERIM BASIS; (B) AUTHORING DEBTOR TO ENTER INTO DEBTOR-IN-POSSESSION FINANCING AGREEMENT; AND (C) PROVIDING ADEQUATE PROTECTION TO OTHER SECURED CREDITORS**

This matter coming on to be heard on the *First Day Motion (A) To Authorize Debtor to Incur Post-Petition Financing and (B) To Grant Priming Lien and an Allowed Super-Priority Claim* (the "DIP Motion") filed herein on September 24, 2013 [Doc. No. 11] and the *Motion of Lily Group, Inc. for (A) Authorization to Use Cash Collateral, and to Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001* (collectively, the "First Day Motions") each filed by Lily Group, Inc., debtor and debtor in possession herein (in its prepetition capacity, the "Borrower," and in its postpetition capacity, the "Debtor"), for the entry of an order authorizing it to use cash collateral pledged to LC Energy Holdings LLC, as assignee of Platinum Partners Credit Opportunities Master Fund LP ("Holdings") and to give security therefore; authorizing the Debtor to enter into a Debtor-in-Possession Financing Agreement; and granting Adequate Protection to other secured creditors. The Court,

1

having reviewed the First Day Motions and having directed that notice be given of a hearing on the First Day Motions to the Debtor, Holdings, the Office of the United States Trustee, the Internal Revenue Service, all known secured creditors and the 20 largest creditors of the Debtor, said Notice having been transmitted by counsel for the Debtor by Fax and first class mail on September 25, 2013, and upon completion of a hearing held on September 26, 2013 (the "Interim Hearing") pursuant to section 364 of the United States Bankruptcy Code, 11 U.S.C. §101-1330 (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") now finds as follows:

A.  On September 23, 2013 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code").  Since that time, Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Code.

B.  Debtor filed its First Day Motions as set forth herein.

C.  Holdings previously entered into financing arrangements with Lily Group, Inc., pursuant to, among others, the following documents that are incorporated herein by reference (the "Loan Documents"):

1.  Note Purchase Agreement evidencing the purchase of a Promissory Note by Platinum Group from Lily Group (the "Loan").

2.  Amendment to Note Purchase Agreement dated May 15, 2012 (the "NPA 1st Amendment");

3.  Second Amendment to Note Purchase Agreement dated May 25, 2012 (the "NPA 2nd Amendment");

4.  Third Amendment to Note Purchase Agreement dated June 15, 2012 (the "NPA 3rd Amendment");

5.  Promissory Note dated February 16, 2012 (the "Note");

6.  Mortgage, Security Agreement, Assignment of Production and Proceeds, Financing Statement and Fixture Filing dated as of February 16, 2012 (the "Mortgage");

7.  Pledge and Security Agreement

and

8.  All other documents and agreements signed in connection with the financing arrangements from the Lily Group to Holdings (as assumed, amended and

2

modified from time to time, together with items A-G, collectively, the "Loan Documents").

As of August 26, 2013, Holdings alleges that the Debtor owes to Holdings the sum of $18,000,879.00 under the terms of the Loan Documents.

D. Pursuant to the Mortgage, Holdings asserts that the prepetition obligations ("Prepetition Obligations") due and owing from the Debtor to Holdings are secured by, among other things, the following (collectively, the "Prepetition Collateral"):

All Business Assets, Inventory, Chattel Paper, Accounts (including accounts receivable and the proceeds thereof), Equipment and General Intangibles of the Borrower, whether now owned or hereafter acquired (the "Collateral").

All Real Estate Mortgage interests in property owned and/or leased by the Debtor (the "Real Estate Collateral").

In addition to the above, Debtor has granted to Holdings a security interest in all accession, attachments, accessories, tools, parts, supplies, replacements, additions, products, produce, instruments, rents, monies, payments, proceeds (including insurance) and records of the Collateral and the Real Estate Collateral.

The Collateral is more fully described in the "Prepetition Documents" (as hereinafter defined).

E. To continue the operation of its business during the Chapter 11 reorganization process, Debtor represents that it must utilize cash collateral pledged to Holdings and borrow additional funds form Holdings to pay post-petition obligations incurred by Debtor in the ordinary course of its business.

F. The Debtor desires that the Holdings make a postpetition Debtor-in-Possession Loan ( the "DIP Loan") to the Debtor pursuant to the terms and conditions set forth in the Loan Documents, as amended herein. The postpetition obligations of the Debtor to Holdings under the Loan Documents shall be referred to herein as the "DIP Indebtedness". The Debtor's inability to fund daily operations could result in a long-term negative impact on the value of the Debtor to the prejudice and detriment of the Debtor and its creditors, customers and employees.

G. Holdings indicated a willingness to loan funds to the Debtor, subject to the conditions set forth below and the Debtor represents that it is presently unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense, unsecured credit allowable under Section 364(a) or (b) of the Code or secured credit under Section 364(c) of the Code, other than credit from the Holdings as provided in this Order pursuant to Section 364(d) of the Code.

H. Rick Risinger, the CEO of the Debtor was prepared to testify at the Hearing regarding:

    (1) the negotiations pertaining to this Order;

    (2) the propriety of the filing of the Petition by the Debtor and the necessity for the financing and financial accommodations approved pursuant to this Order;

    (3) the events leading up to the filing of the Petition by the Debtor;

    (4) the Debtor's need for use of the Collateral and the DIP Loan to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate; and

    (5) those expenses which must be paid in order to avoid immediate and irreparable harm to the Debtor's estate

I. Good cause has been shown for entry of this Order. Among other things, the entry of this Order will minimize disruption of Debtor's business as a going concern and will increase the possibility of a successful rehabilitation; therefore, entry of this Order is in the best interest of Debtor, the estate, and its creditors.

J. The terms of this Order and the financing contemplated herein have been negotiated at arms length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, and are in good faith as that term is used in §364(e) of the Code. Accordingly, Holdings in making advances pursuant to this Order is entitled to the protection subscribed in §364(e) of the Bankruptcy Code.

K.   This Order is an interim order with regard to the use of cash collateral by the Debtor, and a final order with regard to the DIP Loan extended herein.  The Debtor has provided sufficient notice of this Order to the U.S. Trustee's office, all creditors holding secured claims of record who have an interest in the cash collateral of the Debtor, and the creditors holding the 20 largest unsecured claims (according to the list filed by Debtor pursuant to Bankruptcy Rule 1007(d).

L.   This Order is entered in a "core" proceeding within the meaning of 28 U.S.C. § 157.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

**SECTION 1:**
**INTERIM ORDER GRANTING AUTHORITY TO UTILIZE CASH COLLATERAL**

1.1   The Debtor shall be, and hereby is, authorized to use Cash Collateral, on the terms set forth herein:

A.   The Debtor may use Cash Collateral, on a daily basis, up to the level of and only to be used to satisfy those expenses set forth set forth in the Debtor's budget attached hereto as **Exhibit A** (the "Budget") for a period of fifteen (19) days from September 26, 2013 through October 15, 2013.

B.   The Prepetition Documents are hereby ratified and approved by the Debtor as to the DIP Loan and DIP Financing addressed in Section 2 of this Order. The Debtor shall have fifteen (15) days after the entry of this Order to challenge the validity of any Prepetition security interest in the Debtor's assets allegedly held by Holdings.  Any ratification of the Debtor of the Prepetition documents as set forth in this Order shall be without prejudice to any other party appearing in the case.  The Prepetition documents between the Debtor and Holdings  shall continue in full force and effect with respect to the Prepetition Indebtedness and Prepetition Collateral, and with regard to the Postpetition Indebtedness and Postpetition Collateral as specifically set forth herein; provided, that all obligations, commitments or agreements of Holdings contained in the Prepetition Documents to provide loans, advances or other financial accommodations to or for the benefit of the Debtor are terminated and ceased as of the Petition Date except as specifically set forth herein.   The Budget is intended to bind the Debtor for the period set forth therein.

1.2.   Except to the extent liens exist pursuant to law and such liens were perfected prior to the Petition Date and are not subject to subordination, the liens and security interests granted to Holdings by the Debtor shall constitute first, paramount, enforceable and valid liens upon and security interests in the Prepetition Collateral.

1.3. All Postpetition Indebtedness which may from time to time hereafter be owing by the Debtor to Holdings, and all other indebtedness which may now or from time to time hereafter be owing by the Debtor to Holdings (including, without limitation, the Prepetition Indebtedness) shall be secured by first and paramount liens upon, and security interests in, the Prepetition Collateral (except to the extent liens prior to Holdings' liens exist pursuant to law which were properly perfected prior to the Petition Date) and (to the extent not included therein), first and paramount liens upon, and security interests in, the following property of the Debtor (collectively, the "Postpetition Collateral"):

1.4. To further evidence the Postpetition Indebtedness, the creation of Holdings' security interests in and liens upon the Postpetition Collateral and the other terms and conditions of the financing and financial accommodations approved hereby, the Debtor is authorized to (but at Holdings' option need not) execute and deliver to Holdings the following (collectively, the "Postpetition Documents"), in form and substance satisfactory to Holdings:

    A. Agreements, instruments and documents;

    B. All such financing statements, notices, schedules, security agreements, mortgages, assignments, consents, agreements, instruments and documents necessary or required to evidence loans, to consummate the terms and provisions of this Interim Order and the Postpetition Documents and to perfect the liens and security interests to be given to Holdings pursuant thereto;

    C. Such other agreements, instruments and documents from the Debtor or third parties as Holdings or its counsel shall require and such other orders of the Court and other courts, with respect to the Debtor or third parties, as Holdings or its counsel shall require.

Until and unless the Postpetition Documents are executed, the terms and conditions of this Interim Order shall govern the Postpetition Indebtedness.

1.5. The Debtor shall be authorized to use the proceeds of Collateral pledged to Holdings pursuant to Paragraph 1.1 hereof only for payment of such items as are set forth in the Budget. Payment by the Debtor of amounts or expenses other than those specifically set forth in the Budget ("Unauthorized Payments") shall constitute cause to lift the automatic stay unless Holdings consents to such payment or payments in writing. In accepting or rejecting the Budget or any other budget and by taking or omitting to take any other actions pursuant to this Interim Order, Holdings shall not have any liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" with respect to the operation or management of the Debtor or to be acting as an "employer" of any of the Debtor's employees.

    1.6.    Any Proceeds resulting from the sale of Postpetition Collateral shall be remitted to Holdings and shall be applied by Holdings, as approved by this Court, as follows:

        A.    first, to Postpetition Interest, costs and expenses;

        B.    second, to Postpetition Indebtedness consisting of principal; and

        C.    last, to all remaining Prepetition Indebtedness.

    1.7.    Agreements by the Holdings to allow use of the Collateral pledged to Holdings, are subject to the following terms and conditions:

        A.    Any agreements by Holdings to allow use of its Cash Collateral shall terminate immediately upon the occurrence of any Event of Default that is not cured in accordance with the terms of this Interim Order or the Prepetition Documents (as applicable), each of which Events of Default shall constitute an Event of Default under this Interim Order, entitling Holdings, among other things, to terminate this Interim Order upon filing a notice with the Court and the Debtor. For purposes of this Interim Order, an Event of Default shall include any of the following: (i) any "Event of Default" as defined in the Prepetition Documents, (ii) the total amount of the Debtor's financing (as set forth in paragraph 1(A) hereof) exceeding $19,000,000.00, (iii) failure to pay any payment due under the terms of this Interim Order on or before the date said payment is due with no grace period allowed, and (iv) breach of any promise, duty, covenant, or requirement contained in this Interim Order.

        B.    Holdings may, however, in its sole discretion, elect in writing not to terminate the Debtor's authority to use Collateral and may, in its sole discretion, elect to continue to allow use of Collateral. Any such use shall be without prejudice to Holdings' ability to terminate use and shall not constitute any course of dealing obligating the Holdings to make financial accommodations of any kind in the future. Upon termination of the Debtor's authority to use Collateral hereunder, by either party, the Prepetition Indebtedness and Postpetition Indebtedness, including all accrued and accruing interest, costs and expenses, shall then be immediately due and payable and Holdings shall be entitled to: (i) exercise any and all rights and remedies allowed under the Prepetition Documents, the Postpetition Documents (including this Interim Order), or applicable law; (ii) receive and apply the Cash Proceeds of the Prepetition and Postpetition Collateral; and (iii) cease all funding of the Debtor; and the Debtor hereby consents to cease all use of cash collateral upon termination; <u>provided</u>, <u>however</u>, that the obligations and rights of the Holdings and the Debtor with respect to all transactions which have occurred prior to such termination, including, without limitation, the Debtor's obligation to remit, and Holdings' right to receive and apply, Cash Proceeds, shall remain unimpaired and

unaffected by any such termination and shall survive such termination; and provided, further, that upon such termination, Holdings shall be deemed to have retained all its rights and remedies as provided pursuant to the Bankruptcy Code. This Interim Order and the Postpetition Documents shall automatically be deemed terminated and the Prepetition and Postpetition Indebtedness shall become immediately due and payable as of October 15, 2013, subject to further Court order.

1.8. The signature of Richard Riesinger or any other person authorized by the corporate resolutions referred to in Paragraph 4(D) above, whether by letter to Holdings or appearing on any one or more of the Postpetition Documents, shall bind the Debtor as of the Petition Date.

1.9. Upon entry of this Interim Order, the security interests and liens granted to Holdings by virtue of this Interim Order shall be deemed to continue to be first, valid, enforceable and perfected as against all third parties to the extent enforceable prepetition, as of the Petition Date and without further action of any party, including Holdings; provided, however, that Holdings may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing the Debtor as "debtor" and Holdings as "secured party", all mortgages or similar instruments which are filed granting to Holdings liens upon and security interests in, real property, and all certificates of title for motor vehicles issued and evidencing liens and security interests in favor of the Holdings, shall be deemed to have been filed and the security interests and liens evidenced thereby shall be deemed perfected nunc pro tunc as of the Petition Date.

1.10. The Debtor is hereby required to deliver to Holdings a weekly report following the Petition Date and so long as a Plan of Reorganization has not been confirmed and/or a sale of substantially all of the Debtor's asset has not been completed, the following information:

   i. a report of operations included as part of a 13 week pro-forma report indicating all income and expenses for the weekly period;
   ii. Weekly Activity Highlights at the Mine;
   iii. Any Unusual Events/Issues;
   iv. List of all Checks Issued;
   v. Status on Stalking Horse Bid Process including potential bidders.

In addition the Debtor shall provide on a monthly basis such financial and other information concerning the business and affairs of the Debtor as required pursuant to the Prepetition Documents and as required to determine compliance with any performance covenants and as Holdings shall request from time to time including on a daily basis: (i) proof of inventory purchases; (ii) evidence of inventory shipments; (iii) copies of bills of lading; (iv) copies of the sales journal or invoice register; and (v) tax payment verification.. The Debtor shall also provide in form and substance

satisfactory to Holdings a monthly financial statement as of the previous month on the fifteenth (15th) day of each following month.  The Debtor shall further provide Holdings with daily information as to the extent and composition of the Prepetition Collateral and Postpetition Collateral and as to any collections thereon.  The Debtor shall further provide Holdings, on the fifth (5th) day of each month, with information, reasonably satisfactory to the Holdings, on the aging of accounts receivable collateral and accounts payable.  The Debtor shall further provide Holdings with evidence of the payment of personal and real property tax on the Debtor's assets.   Holdings shall be entitled to inspect any books and records at any time at the Debtor's place of business.

      1.11.   This Interim Order is further subject to the delivery to Holdings of evidence, satisfactory to Holdings' counsel, that the Prepetition Collateral and the Postpetition Collateral are insured for the full replacement value thereof and Holdings is named as a loss payee on all insurance policies.

      1.12.   If it shall become necessary for Holdings, in its sole discretion, to exercise its rights under the Prepetition Documents or Postpetition Documents in order to effect repayment of any Prepetition Indebtedness or Postpetition Indebtedness or to preserve any of the Prepetition Collateral or Postpetition Collateral, after first giving five (5) days written notice to the Debtor or its counsel of record and the counsel of record for any acting creditors' committee, Holdings shall be entitled to an expedited hearing within two (2) days (or as soon thereafter as the Court's schedule will allow) after such notice is given with respect to the vacation of the automatic stay and for an order authorizing other appropriate relief.  The Debtor consents to service of any notice or motion relative to the lifting of the automatic stay upon its counsel, or upon any of its counsel of record.  Notwithstanding the foregoing, Holdings shall be entitled to an immediate hearing in the event it alleges fraud or other imminent danger to any of its collateral.  The Debtor hereby waives any right to seek: injunctive relief under section 105 of the Bankruptcy Code or other applicable law in connection with or related to the provisions of this Interim Order.

      1.13.   All secured creditors reflected in public records and of which the Debtor is otherwise aware, the United States Trustee, the twenty largest unsecured creditors and all creditors who have filed a request to receive notice shall be immediately mailed copies of the Motion and this Interim Order, which mailing shall constitute adequate notice of the final hearing on this Interim Order, as described in Paragraph 14 below.

      1.14.   This matter is set for final hearing  on October 15, 2013 at 10:30 a.m..  Such date may be adjourned or continued by this Court without further notice other than that given in open court.  Any party in interest objecting to the provisions of this Interim Order must serve its objections in writing so that such objections are received no later than the close of business three days prior to the hearing date.  Any objection or other response to this Interim Order shall be served on: (1) counsel for Holdings, Jay P. Kennedy, Kroger, Gardis & Regas, LLP, 111 Monument Circle, Suite 900, Indianapolis, Indiana, 46204-5125; (2) counsel for the Debtor, David Krebs, Tucker, Hester, Baker & Krebs, One Indiana

Square, 101 N. Pennsylvania Street, Indianapolis, IN 46204; (3) the United States Trustee, 101 West Ohio Street, Suite 101, Indianapolis, Indiana 46204; and all parties that have appeared in the case. If no objection to this Interim Order is timely filed and served in accordance with the above, this Interim Order shall continue in full force and effect, in accordance with its terms, subject to such modifications, if any, as the Court may make at the final hearing. If a written objection or other response is timely filed and served in accordance with the above, the Court will consider such objection or response at the final hearing. The final hearing may be adjourned by announcement in open court at the time of the above-scheduled final hearing or any subsequently scheduled final hearing; provided, however, the adjournment of the final hearing shall not extend or otherwise alter the above-stated time for filing and serving objections or other responses.

      1.15.   This Interim Order will expire on October 15, 2013, unless extended by further order of the Court upon the agreement of Holdings and the Debtor. If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such modification, vacation, or stay shall not affect the validity of: (a) any indebtedness to Holdings incurred pursuant to this Interim Order prior to the effective date of such modification, vacation, or stay; or (b) the validity and enforceability of any security interest or lien or priority authorized hereby with respect to the Postpetition Indebtedness. Moreover, notwithstanding such modification, vacation, or stay, any advances of funds, guarantees, use of cash collateral or other financial accommodations made pursuant to this Interim Order by Holdings to or for the benefit of the Debtor prior to the effective date of such modification, vacation or stay, shall be governed in all respects by the original provisions of this Interim Order and Holdings shall be entitled to all the rights, privileges, and benefits, including without limitation the security interests, liens and priorities granted herein, with respect to all such advances.

      1.16.   To the extent there exists any conflict between the Postpetition Documents, the Motion or any other agreements and the terms of this Interim Order, this Interim Order shall govern.

      1.17.   Nothing herein contained shall: (i) affect or impair Holdings' right to seek other adequate protection of its interests in the Prepetition Collateral or to seek any other relief available under any section of the Bankruptcy Code, specifically including, but not limited to, Holdings' right to move the Court to terminate the automatic stay in Bankruptcy pursuant to 11 U.S.C. §362 with regard to the Real Estate Collateral; (ii) be deemed to constitute or constitute a commitment by Holdings to continue to make advances to the Debtor or to finance the Debtor's chapter 11 case; or (iii) be deemed to constitute a waiver by Holdings of any default by the Borrower under the Prepetition Documents other than a default occasioned by the filing of the Petition.

### SECTION 2:
### FINAL ORDER GRANTING AUTHORITY TO ENTER INTO DEBTOR-IN-POSSESSION FINANCING AGREEMENT

### A. LOAN AUTHORIZATIONS

2.1     Debtor is hereby authorized to borrow funds from Holdings on a post-petition "super-priority" basis pursuant to 11 U.S.C. § 364(d) and use proceeds of the DIP Indebtedness during the term of this Order for the payment of those expenses set forth set forth in the Debtor's budget attached hereto as **Exhibit A**.

2.2     The terms and conditions of the DIP Loan Documents shall govern the DIP Indebtedness. As incurred, Holdings shall be entitled to recover all of its reasonable out of pocket expenses ("Holdings Expenses"), including reasonable consultants, attorneys and paralegal fees, costs and expenses, incurred in connection with the DIP Indebtedness, subject only to a final, non-appealable Order that the fees and expenses incurred and paid were unreasonable. Holdings shall provide an itemized accounting of Holdings Expenses within thirty (30) days of written request.

2.3     The terms and conditions of the DIP Loan Documents are herby approved by the Court following Notice and Hearing.

### B. ADEQUATE PROTECTION

2.4     To secure the DIP Indebtedness, Holdings is hereby granted, pursuant to Section 364(d)(1) a first lien on all the Debtor's Pre-Petition and Postpetition Collateral, whether now owned or hereafter acquired by Debtor, and all proceeds, rents or profits thereof, free and clear of all liens, security interests or encumbrances of the Secured Creditors or any third party (collectively, the "DIP Collateral"). Other than the first priority liens and security interests in favor of Holdings pursuant to this Order, no other claims, liens or security interests shall attach to the DIP Collateral in this or any subsequent proceeding under the Bankruptcy Code prior to the indefeasible payment and satisfaction in full of the DIP Indebtedness without the prior written consent of Holdings.

2.5     As adequate protection, the Secured Creditors will be afforded, as adequate protection that they retain their liens in the Real Estate and Personal Property, albeit the liens being inferior to the liens granted to Holdings as set forth herein, with the same validity and in the same order of priority as existed on the Petition Date.

2.6     All liens and security interests in the DIP Collateral granted to Holdings by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection, although Holdings may, in its sole discretion, and at Debtor's expense, make any filings or recordations or other acts it deems appropriate with respect to such perfection.

2.7     In consideration of the Funding, Debtor hereby irrevocably waives and is barred from asserting or exercising any right, without (a) Holdings' prior written consent, or (b) prior payment and satisfaction in full of the DIP Indebtedness, to (i) grant or impose, under Section 364 of the Bankruptcy Code or otherwise, senior or equal liens on or security interests in any DIP Collateral without paying the Postpetition Indebtedness; (ii) use, or seek an order granting Debtor the right to use, cash collateral, (iii) use, or seek an order granting Debtor the right to obtain DIP secured funding from any other source,or (iii) modify or affect any of the rights of Holdings under this Order without paying the Postpetition Indebtedness.

2.8     The DIP Indebtedness shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration, including those specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in this case, any conversion of this case pursuant to Section 1112 of the Bankruptcy Code, or in any other proceedings related hereto or thereto), except to Tucker, Hester, Baker & Krebs, LLC, Debtor's counsel in the amount of Fifty Thousand Dollars ($50,000.00) (the "Debtor's Counsel Carve-Out").  No costs or expenses of administration or other charge, lien, assessment or claim of any person or entity (whether incurred after the Petition Date, any conversion of this case pursuant to Section 1112 of the Bankruptcy Code or any other proceedings related hereto or thereto) shall be imposed against Holdings, its claims, or Holdings' interest in the DIP Collateral under Section 506(c) of the Bankruptcy Code or otherwise, except to Tucker, Hester, Baker & Krebs, LLC, Debtor's counsel in the amount of Fifty Thousand Dollars ($50,000.00) pursuant to the Debtor's Counsel Carve-Out.  Nothing in this Order constitutes allowance of or consents to a Section 506(c) surcharge.  Notwithstanding anything to the contrary above,  Tucker, Hester, Baker & Krebs, LLC shall not be entitled to all or any portion of the Debtor's Counsel Carve-Out from any assets of the Debtor pledged to Holdings for any action which seeks to invalidate all or any portion of Holding's Prepetition or Post-Petition claims in this proceeding.

2.9     All collections and proceeds of any DIP Collateral and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of Debtor, or to which Debtor shall become entitled to at any time ("Post-Petition Collections") shall be deposited into the Debtor's established bank accounts.  All banks in which any lockboxes and blocked accounts of Debtor exist are authorized and directed to comply with any request of Holdings to turn over to Holdings all funds therein, or collected after the Petition Date, without offset or deduction of any kind, subject to Court approval.

2.10     Holdings' right to credit bid Holdings' claims at any sales pursuant to Section 363(k) of the Bankruptcy Code shall be preserved.

2.11     Debtor shall permit Holdings and any authorized representatives designated by Holdings, including auditors and appraisers engaged by Holdings, reasonable access to

visit and inspect any of the properties of Debtor during normal business hours, to review Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers, consultants, and accountants.  Without limiting the generality of the foregoing, Debtor shall promptly provide to Holdings and its designated representatives any information or data reasonably requested to monitor Debtor's compliance with the provisions of this Order and to perform audits, appraisals or other valuation analyses of any property of Debtor.

    2.12   Omitted

    2.13   All of Holdings' rights are expressly reserved if no Final Order is entered.

    2.14   The provisions of this Order shall be binding upon and inure to the benefit of Holdings, Debtor and their respective successors and assigns, including any trustees of Debtor in Chapter 11 or Chapter 7.

    2.15   Debtor shall not seek an order of dismissal of this case under Section 1112 of the Bankruptcy Code unless, prior to the entry thereof: 1) the DIP Indebtedness to the Holdings shall have been paid in full in cash or 2) Holdings consents.  If this case is dismissed or converted, Holdings' rights and remedies under this Order shall remain in full force and effect as if this case had not been dismissed or converted.

    2.16   All of the provisions of Section 2 of this Order are final and binding.

    2.17   Debtor shall not, without Holdings' prior written consent, seek to modify this Order. Notwithstanding anything contained herein, if any provision of this Order is hereafter modified by final order of this or any other court, such modifications shall not affect the validity of any DIP Indebtedness outstanding or any right authorized hereby with respect to any such DIP Indebtedness.  Without limiting the foregoing, if this Order is subsequently modified, the Debtor shall nonetheless be required to repay any DIP Indebtedness on demand, subject to further Court order.

    2.18   This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize Debtor to obtain credit on the terms and conditions upon which Debtor and the Holdings have agreed.  Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code except as otherwise provided herein.

    2.19   The Debtor, at its expense, shall (a) continue to keep all collateral insured to its maximum insurable value against all loss, peril and hazard and name Holdings as lender's loss payable under such policies; and (b) pay any and all post-petition taxes, assessment and governmental charges, except to the extent such are being contested in good faith by appropriate proceedings and Debtor shall maintain appropriate cash reserves

for these expenses and (c) provide Holdings with proof of the foregoing within 3 days of written demand. Copies of all federal tax returns, federal tax deposits and other payments made by Debtor during the pendency of this Order shall be mailed to Holdings upon specific written request.

### C. COVENANTS AND REPORTING REQUIREMENTS

2.20 The Debtor shall comply on a post-petition basis with all the terms and conditions of the Agreement.

2.21 The Debtor will promptly give the Holdings prior written notice of the occurrence of any event or any matter that will result in a material adverse change in its post-petition business, assets, operations or financial condition.

2.22 Debtor shall deliver to counsel for the Holdings concurrently with their filing, copies of each pleading or report filed with the Court by Debtor and, except for Proofs of Claim, notify counsel for Holdings of any pleading received by the Debtor which will result in a material adverse change in Holdings' position with the Debtor.

2.23 Debtor shall deliver to the Holdings concurrently with their filing, copies of each monthly report filed with the court.

2.24 The Debtor, the Holdings, the Secured Creditors and the Official Unsecured Creditors' Committee may agree to extend this Order without further order of the Court, provided, the Holdings shall have no obligation to do so.

### D. DEFAULT, RIGHTS AND REMEDIES OF HOLDINGS AND SERVICE

2.25 Each of the following events shall constitute an event of default hereunder:

(a) An order dismissing the case, converting the case to Chapter 7, appointing an examiner with expanded powers or a trustee, or terminating the authority of the Debtor to conduct business.

(b) Failure of Debtor to make any payment to Holdings when due whether on demand or otherwise.

(c) Payment by the Debtor of any amount not included in the Budget.

(d) There is a material default by the Debtor under this Order, the Agreement or to Holdings.

2.26   Upon the occurrence of an event of default:

    (a)   The entire DIP Indebtedness remaining unpaid at the election of Holdings and without notice shall become due.

    (b)   Holdings shall be entitled to immediately file a Motion seeking relief from the stay to enable Holdings to realize on all rights with regard to its Collateral and further shall be entitled to request that the Court to establish a hearing on Holding's Motion on two (2) days Notice, which notice period the Debtor stipulates is reasonable.

    (c)   All funds in the Debtor's accounts shall be turned over to Holdings upon further Court order.

2.27   Holdings shall have no obligation to advance any funds to the Debtor except as specifically set forth herein.

### E. OTHER RIGHTS, OBLIGATIONS AND PROVISIONS

2.28   Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements that Holdings may reasonably require and/or which may otherwise be deemed necessary by Holdings to effectuate the terms and conditions of this Order, including, without limitation, such documents as Holdings may deem necessary to correct defects in title and like matters.

2.29   No delay or failure to exercise any right, power or remedy accruing to Holdings upon breach or default by Debtor under this Order or any document or agreement shall impair any such right, power or remedy of Holdings nor shall it be construed to be a waiver of any such breach or default, nor of any breach or default theretofore or thereafter occurring, nor an acquiescence therein.

2.30   Counterparts and/or facsimile signatures may give consent to this Order.

.

###

**EXHIBIT A**

**Lily Group, Inc.**

**Agreed Budget for Period of <u>9.23.13-10.31.13</u> for the
(a) Use of LC Holdings Cash Collateral and (b) Use of DIP Funding provided by LC Holdings**

**Source of Funds:**

1. $218,000.00 Account Receivable from IPL; received 9.26.13
2. $124,000.00 First Priority Priming DIP Loan from LC Holdings
3. $110,000 anticipated revenue from IPL coal shipment 10/11/13
_____

$452,00.00 Total

**Allowable Use of Funds for period 9.23.13 - 10.31.13:**

| | |
|---|---|
| 1. Debtor's Counsel Retainer | $30,000 |
| 2. Health Insurance (payable end of Sept for Sept/Oct coverage) | $73,000 |
| 3. Workers Comp Insurance (through 10/31) | $25,000 |
| 4. Back Payroll & C/S Garn | $110,000 |
| 5. Payroll Salaries for pay periods ending (9.28, 10.5; 10.12; 10.19,10.26,11.3 ) | $120,000 |
| 6. Utility expenses | $20,000 |
| 7. Fuel/ Chemicals | $18,000 |
| 8. Pump Rental through 10.31 | $20,000 |
| 9. Landree Ditch | $ 22,000 |
| 10. P&C Insurance | $3,000 |
| 11. Contingency | $5,000 |
| TOTAL | $446,000 |

## LILY/LANDREE BUDGET WORKSHEET (10/01/13 - DRAFT)

## SUBJECT TO APPROVAL BY PLATINUM

**CURRENT CASH COLLATERAL/DIP LOAN - AS DISCUSSED**

| | | | |
|---|---|---|---:|
| 1 | CURRENT BANK BALANCE (IPL PMT) | $ | 218,000.00 |
| 2 | DIP ADVANCE 1 | $ | 62,000.00 |
| 3 | DIP ADVANCE 2 | $ | 62,000.00 |
| 4 | ADDL IPL REVENUE | $ | - |
| | TOTAL CASH AVAILABLE THRU 10/12/13 | $ | 342,000.00 |

**USE OF PROCEEDS (ADDL UNPAID WAGES - $125,000-NET)**

| | | | |
|---|---|---|---:|
| 4 | BACK PAY - 08/24 NET | $ | 49,688.16 |
| 5 | BACK PAY - 08/31 NET | $ | 50,240.43 |
| 6 | CHILD SUPPORT & GARNISHMENTS (THRU 08/31) | $ | 4,309.26 |
| 7 | CHILD SUPPORT & GARNISHMENTS (THRU 09/21) | $ | 6,000.00 |
| 8 | HEALTH INSURANCE - (FOR SEP) | $ | 49,905.59 |
| 9 | LEGAL RETAINER (THBK) | $ | 25,000.00 |
| | SUB-TOTAL (A) | $ | 185,143.44 |

**MONTHLY ITEMS FOR SEP-OCT (NEXT TWO WEEKS)**

| | | | |
|---|---|---|---:|
| 10 | PAYROLL W/E 09/28 - GROSS (INCL PR TAXES) | $ | 15,000.00 |
| 11 | PAYROLL W/E 10/05 - GROSS (INCL PR TAXES) | $ | 15,000.00 |
| 12 | PAYROLL W/E 10/12 - GROSS (INCL PR TAXES) | $ | 15,000.00 |
| 13 | PAYROLL W/E 10/19 - GROSS (INCL PR TAXES) | | |
| 14 | PAYROLL W/E 10/26 - GROSS (INCL PR TAXES) | | |
| 15 | PAYROLL W/E 11/03 - GROSS (INCL PR TAXES) | | |
| 16 | WORKERS COMP RENEWAL (10/01-10/31) | $ | 25,000.00 |
| 17 | HEALTH INSURANCE - (FOR OCT) | $ | 16,000.00 |
| 18 | PUMP RENTAL (FOR OCT) | $ | 15,000.00 |
| 19 | UTILITIES (FOR Oct - Duke, et al) | $ | 20,000.00 |
| 20 | CHEMICALS | $ | 3,000.00 |
| 21 | FUEL | $ | 3,000.00 |
| 22 | MISC OPER EXP. (LANDREE INCL DITCHES) | $ | 3,000.00 |
| 23 | PROPERTY/CASUALTY INSURANCE | $ | 3,000.00 |
| 24 | CONTINGENCY - 1 (EMERG USE ONLY-NO PR) | $ | 12,000.00 |
| | SUB-TOTAL (B) | $ | 145,000.00 |

| | | |
|---|---|---:|
| SUB-TOTAL (A) | $ | 185,143.44 |
| SUB-TOTAL (B) | $ | 145,000.00 |
| TOTAL DIP SPENDING - THRU 10/31/13 | $ | 330,143.44 |

| | | |
|---|---|---:|
| NET CASH BALANCE @ 10/13/13 | $ | 11,856.56 |

| | AS REV - 10/01/13 THRU 10/31/13 | IP&L Train Revenue | 10/11/2013 | |
|---|---|---|---|---|
| $ | 218,000.00 | $ | 110,000.00 | |
| $ | 62,000.00 | | | |
| $ | 62,000.00 | | | |
| $ | 110,000.00 | | | |
| $ | 452,000.00 | $ | 110,000.00 | |
| | | | | |
| $ | 49,688 | | | |
| $ | 50,240 | | | |
| $ | 4,300 | | | |
| $ | **6,000** | | | |
| $ | 49,905 | | | |
| $ | 30,000 | $ | 5,000 | |
| $ | 190,133 | $ | 5,000 | |
| | | | | |
| $ | 20,000 | $ | 5,000 | Pay Period W/E 10/19 |
| $ | 20,000 | $ | 5,000 | Pay Period W/E 10/26 |
| $ | 20,000 | $ | 5,000 | |
| $ | 20,000 | $ | 20,000 | |
| $ | 20,000 | $ | 20,000 | |
| $ | 20,000 | $ | 20,000 | |
| $ | 25,000 | | | |
| $ | 23,000 | $ | 7,000 | |
| $ | 20,000 | $ | 5,000 | |
| $ | 20,000 | | | |
| $ | 8,000 | $ | 5,000 | |
| $ | 10,000 | $ | 5,000 | |
| $ | 25,000 | $ | 22,000 | Course Refuse Ditch and Remedial Work |
| $ | **3,000** | | | |
| $ | 5,000 | $ | (7,000) | |
| $ | 259,000 | $ | 112,000 | |
| | | | | |
| $ | 190,133 | $ | 5,000 | |
| $ | 259,000 | $ | 112,000 | |
| $ | 449,133.00 | $ | 117,000.00 | |
| | | | | |
| $ | 2,867.00 | $ | (7,000.00) | |