UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LILY GROUP, INC., | ) | CASE NO. 13-81073-FJO-11 |
| | ) | |
| Debtor. | ) | |

**MOTION TO ESTABLISH BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL THE ASSETS OF LILY GROUP, INC. AND ESTABLISHING AUCTION AND HEARING DATES**

Lily Group, Inc., as debtor and debtor-in-possession ("LGI or the "Debtor"), by counsel, hereby respectfully requests the entry of an Order (the "Bid Procedures Order") pursuant to 11 U.S.C. §§ 105(a), 363, and 365, Federal Rule of Bankruptcy Procedure 2002, 6004, and 6006 and Local Rule B-6004-1 establishing certain bidding procedures in connection with *Debtor's Motion Pursuant to 11 U.S.C. §§ 363 and 365 for (A) Authority to Sell Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, with Valid Liens to Attach to Proceeds of Sale, and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* (the "Sale Motion"), which is expected to be filed by the Debtor no later than Monday, December 9, 2013.[1] The Debtor also requests that the Court establish dates for a bid deadline, an auction of the assets to be sold, and a hearing on the Sale Motion. In support of its bid procedures motion, the Debtor states as follows:

---

[1] Capitalized terms not defined herein have the definitions given them in the Sale Motion.

1

**Jurisdiction and Venue**

1. The Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September 23, 2013 (the "Petition Date") and continues to operate its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

2. The official unsecured creditors' committee (the "Committee") was appointed in this case on October 18, 2013 [Docket 47].

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(N) and (O). The relief requested flows from the statutory scheme codified by the Bankruptcy Code, addresses an area of law long determined by Bankruptcy Courts, and is purely a creature of federal law. Accordingly, this Court has jurisdiction and authority to hear this matter and enter final orders under Stern v. Marshall, 131 S. Ct. 2594, 180 L.Ed.2d 475 (U.S. 2011) and In re Ortiz, 665 F.3d 906 (7th Cir. 2011).

**Background**

4. Debtor is a development and operation stage company in the energy resource industry that was formed to hold, explore, develop, operate, and manage natural resource properties, with an initial focus on coal exploration. LGI was founded in the fall of 2007 to develop, operate, and open access to a known coal reserve in Indiana. Since inception, LGI has focused on developing the coal reserve to be known as the Landree Mine.

2

5.      The purpose of this Chapter 11 filing was to assist the Debtor in maintaining and preserving its business and assets as a going concern in preparation of an anticipated sale of substantially all of its assets through 11 U.S.C §363, as at the time of filing (and currently), the Debtor has insufficient funds to operate.

6.      Since the Petition Date, the Debtor has obtained authority to use cash collateral under specific terms, and has further obtained several DIP loans from its primary secured creditor, LC Energy Holdings LLC, as assignee of Platinum Partners Credit Opportunities Master Fund LP ("Platinum") (see Docket No's 11; 34; 55; 95).  The combination of DIP Loans and use of cash collateral have allowed the Debtor to maintain its assets under a "bare bones" budget by which the Debtor has preserved and maintained the estate pending a sale.

7.      Prior to the Petition Date (and perhaps through current), the Debtor marketed its business and assets through the assistance of two entities related to each other named BGR Group and Barrier Advisors[2].  After the Petition Date, the Debtor received multiple letters of intent respecting possible purchase terms of the Proposed Sale Assets, however the Debtor has not found the terms of the subject letters of intent to be acceptable as a stalking horse bid at this time.

8.      Debtor has been in communication with, and has shared the received letters of intent, with counsel for Platinum and counsel for the Committee to keep

---

[2] The Debtor has not yet sought authorization from the Court to employ BGR Group or Barrier Advisors for the reason that current discussions continue as to whether seeking employment of BGR Group or Barrier Advisors post-petition is proper under the circumstances.

3

an open and ongoing dialogue as to what may be acceptable to the major players in the case and is in the best interest of the estate, so that a sale may be effectuated on an expedited basis, to the extent possible.

9. Given that the Debtor does not find that the terms in the current letters of intent represent terms of a sale that is in the best interest of the estate at this time, and after consultation with counsel for Platinum and counsel for the Committee, the Debtor is proposing herein to hold a public auction sale of substantially all of its assets as more specifically set forth herein and in the simultaneously filed Sale Motion, without a stalking horse bid in place.  However, the Debtor requests that it reserve the right to accept a potential stalking horse bid *at the time of hearing to be set on this Bid Procedures Motion*, should an acceptable stocking horse bid be submitted to debtor no later than **three (3) days prior to such hearing on this Bid Procedures Motion.**  The Debtor would then request that the Court hear (at the hearing on the Bid Procedures Motion) the terms of the acceptable stocking horse bid and related proposed bid procedures, without further notice from the Court.

10. The Sale Motion to be filed seeks Court authority to sell the Proposed Sale Assets free and clear of all liens, claims, interests and encumbrances, except as provided in the sale documents, to the buyer making the highest and best offer, with all such valid liens, claims, interests and encumbrances attaching to the sale proceeds to the same extent, validity, and priority as they existed in the Proposed

4

Sale Assets as of the Petition Date unless as previously or otherwise determined by order of this Court.

11. The Debtor, through this Motion, seeks to establish the procedures for bidding on the Debtor's assets, establish an auction date for the sale of the Debtor's assets, and set a hearing on approval of such sale.

## The Proposed Bid Procedures

12. The Debtor proposes to sell the Proposed Sale Assets via auction, and in an effort to maximize the value of the Proposed Sale Assets, contemplates a sale process to solicit offers for the Proposed Sale Assets. The Debtor seeks approval of the Bid Procedures described in this Motion to solicit such offers. The Debtor will then conduct an auction (the "Auction") to determine the highest, best offer (or combination of offers).

13. The Debtor's proposed bid procedures (the "Bid Procedures") are set forth below. The Debtor believes these Bid Procedures will ensure that the Debtor has the opportunity to consider all reasonable offers and to select the highest, best offer.

## Qualified Bidders and Auction

14. In order to participate in the bid process, a potential bidder (a "Potential Bidder") must deliver to Debtor an executed confidentiality agreement in a form acceptable to Debtor (a "Confidentiality Agreement"). A "Qualified Bidder" is a Potential Bidder that has duly submitted a Confidentiality Agreement and provided reasonable evidence of its ability to close. Only Qualified Bidders shall be

permitted to conduct reasonable due diligence with respect to the Proposed Sale Assets during the period prior to the Bid Deadline. Platinum shall be deemed to be a Qualified Bidder, and any bids (including credit bids) made by Platinum at the Auction shall be deemed to be Qualified Bids. Each Qualified Bidder shall be entitled to request reasonable due diligence from Debtor upon execution of a Confidentiality Agreement.

15. In order for a Qualified Bidder to be permitted to participate in the Auction, such bidder will be required to deliver certain bid documents (the "Qualified Bid Documents") to respective counsel for the Debtor, Platinum and Committee by the Bid Deadline. The Qualified Bid Documents shall include:

    a. In respect of such Qualified Bid (other than one from Platinum), a good faith deposit equal to $250,000 in cash (the "Bid Deposit") shall be wired, in immediately available funds, to an escrow agent of Debtor's choosing pursuant to an escrow agreement reasonably acceptable to Debtor and the bidder. The Bid Deposit shall not be subject to any claims, liens, security interests, or encumbrances, except as provided herein. All Bid Deposits of Qualified Bidders, other than the Successful Bidder (as defined below) and the Runner-Up Bidder (as defined below) shall be returned by wire transfer or cashier's check not later than five (5) business days following the end of the auction. The Bid Deposit of the Successful Bidder will be credited against the purchase price at the closing of the sale. If the Successful Bidder does not close on or before the Closing Date (as defined below) and the failure to close is not materially caused by the Debtor, then the Bid Deposit of the Successful Bidder shall be retained by the Debtor's estate. One-half (1/2) of the Bid Deposit of the Runner-Up Bidder shall be returned not later than two (2) business days following the entry of an order approving the sale to the Successful Bidder. Unless the Runner-Up Bidder becomes the Successful Bidder, the remaining one-half (1/2) of the Bid Deposit of the Runner-Up Bidder shall be returned not later than the earlier of (i) twenty-four (24) days following the entry of the order approving the sale of the Proposed Sale Assets to the Successful Bidder and (ii) two (2) business days following the closing of the sale of the Proposed Sale Assets to the Successful Bidder.

    b.    An executed clean copy of a definitive purchase agreement (and related exhibits and completed schedules thereto) (each such agreement (together with such exhibits and schedules) from a Qualified Bidder, a "Qualified PA"). If the Qualified Bidder is an entity formed for the purpose of purchasing Proposed Sale Assets, the Qualified PA must contain a commitment, acceptable to Debtor and DIP Lender in their business judgment and in consultation with the Committee, of the equity holder(s) of the Qualified Bidder to be responsible for the Qualified Bidder's obligations in connection with the purchase of Proposed Sale Assets and contain terms (including the amount of cash consideration and provisions relating to royalties, if applicable) or other documentation evidencing such Qualified Bidder's ability to close on the transactions contemplated hereby.

16. In addition, in order for a bid submitted by a Qualified Bidder to be considered a Qualified Bid, it must satisfy the following requirements and submit evidence satisfying these requirements with its Qualified Bid Documents (collectively, the "Qualified Bid Requirements"):

    a.    Such Qualified Bidder must fully disclose the identity of each individual or entity that will be bidding or otherwise participating in connection with such bid and the complete terms of any such participation. This requirement includes full disclosure of the involvement of any insider of the Debtor or its parent or affiliates in the Qualified Bid, including any consideration given or expected related to the Qualified Bid of the purchase of the Proposed Sale Assets.

    b.    Such Qualified Bidder must acknowledge that: (i) it had an opportunity to conduct any and all due diligence regarding the Proposed Sale Assets prior to submitting such bid; (ii) it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Proposed Sale Assets in making such bid; (iii) except for the representations and warranties contained in its Qualified PA, it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Proposed Sale Assets, or the completeness of any information provided in connection therewith or the Auction; and (iv) its bid is not contingent upon completing due diligence or financing.

    c.    Such Qualified Bidder must provide written evidence acceptable to Debtor and Platinum in consultation with the Committee, in their business judgment, of such Qualified Bidder's financial ability to (i) consummate the transactions contemplated by its Qualified PA (including, without limitation, any debt or equity financing commitment) and (ii) provide adequate assurance of future performance with respect to any executory contracts or unexpired leases it is seeking to have assumed and assigned to it under its Qualified PA.

    d.    If the Qualified Bid includes any reductions for assumption of liabilities or any other payments, the Qualified Bid shall specifically set forth those reductions, or if unknown, the maximum amount of any such reduction. Any Qualified Bid that includes a royalty or other "earn-out" component shall specify the expected duration and total value of the royalty or other payment.

17. A bid received from a Qualified Bidder that includes all of the Qualified Bid Documents and satisfies all of the Qualified Bid Requirements is a "Qualified Bid." Notwithstanding the foregoing, Debtor may, with Platinum's consent, waive one or more of such bid requirements other than paragraph 16.a, in order to obtain the highest and best values. Debtor shall, with Platinum's consent and in consultation with the Committee, determine which of such Qualified Bids constitutes the highest and best offer (the "Auction Starting Bid"). For example, Debtor may determine in its business judgment, that a particular Qualified Bid that contains greater cash consideration at closing but a lower overall purchase price than an alternative Qualified Bid should constitute the Auction Starting Bid.

18. Debtor may reject any bid that, in its discretion (i) is inadequate or insufficient; (ii) does not conform to the requirements of applicable bankruptcy laws or these Bid Procedures; or (iii) is contrary to the best interests of Debtor, its estate and its creditors.

8

19. The Debtor requests that the Court establish **December 31, 2013**, as the Bid Deadline. This is more than 21 days after the hearing on this Motion.

20. The Debtor proposes to then conduct the Auction at the offices of Debtor's counsel, Tucker Hester Baker & Krebs, LLC, located at One Indiana Square, Suite 1600, Indianapolis, IN 46204 **on or about January 6, 2014**. Only Qualified Bidders that submitted Qualified Bids on or before the Bid Deadline will be entitled to make subsequent Qualified Bids at the Auction.

21. If a party submits a Qualified Bid for less than all of the Proposed Sale Assets, then the Debtor may conduct the Auction in such a way as to maximize value, by combining offers and/or by offering discrete parts of the Proposed Sale Assets in multiple lots, with the consent of Platinum and Committee.

22. During the Auction, bidding will begin at the Purchase Price stated in the Auction Starting Bid, and the first bid thereafter shall be at least $100,000 higher than the Auction Starting Bid. All subsequent bids will be made in increments of at least $100,000. The Debtor shall review the bids and, with the consent of Platinum and Committee, announce the highest and best bid as the Successful Bid and the next highest as the Runner-up Bid. The Debtor will file a notice with the Court identifying the Successful Bid and Runner-up Bid, if any, prior to the Sale Hearing defined below. The holder of the Successful Bid must close on the sale of the Proposed Assets within twenty (20) days of the order approving the sale (the "Closing Date"). If the closing does not occur on or before the Closing Date, the Debtor, with the consent of Platinum and in consultation with the

Committee, may choose to close with the Runner-Up Bidder who shall then have twenty (20) days to close on the sale. The Bid Deposit of the Successful Bidder that does not close shall be paid to the estate. The Debtor, with the consent of Platinum and the Committee, may choose to extend the Closing Date with the Successful Bidder and return the Bid Deposit of the Runner-Up Bidder and release it from any further commitment as to the Proposed Sale Assets.

23. The Debtor requests that the Court schedule a hearing to approve the sale (the "Sale Hearing") on a date promptly following the Auction that is convenient for the Court. The Debtor believes that the schedule it proposes will permit potential bidders to conduct reasonable due diligence and interpose competitive bids for the Proposed Sale Assets and enable the Debtor to consummate a sale in an efficient manner. Platinum has advised Debtor it does not intend to make additional loans to Debtor and thus the "expedited" schedule requested herein.

24. The Debtor believes the Bid Procedures are fair and reasonable and will ensure that the sale process maximizes the value of the Debtor's estate. Accordingly, the Debtor requests that the Court enter the Bid Procedures Order.

**Executory Contracts and Unexpired Leases**

25. Not later than **December 16, 2013**, the Debtor shall provide notice to all counterparties to executory contracts and unexpired leases that may be assumed and assigned to the holders of the Successful Bid (the "Assumption and Cure Notice"). The Assumption and Cure Notice shall provide counterparties notice of the

10

amount the Debtor believes must be cured upon assumption and assignment pursuant to Section 365 of the Bankruptcy Code and the procedures to object to the proposed cure. If no objection is filed, the proposed cure of any contract or lease assumed and assigned will be enforced against the counter-party. The Debtor may remove from assumption and assignment any contract or lease that is not purchased by the Successful Bidder at any time up to and including the later of (i) the Closing Date and (ii) ten days after the resolution of any dispute as to the cure amount or terms by written notice to the counterparty. Any such removal from assumption and assignment by written notice shall be deemed a rejection of the contract or lease unless a separate motion to assume and assign is filed by the Debtor prior to the delivery of the written notice.

26.   The proposed form and manner of the Assumption and Cure Notice is reasonably calculated to provide interested parties with timely, proper notice of (i) the title of the contract or lease to be assumed and assigned; (ii) the name of the counterparty to such contract or lease; (iii) any applicable cure amount; and (iv) the deadline by which the counterparty must object. The Debtor submits that no other notice is required.

27.   Except as otherwise agreed to by the parties to an assumed contract or lease, the Buyer shall pay the cure amounts in cash. In the event of a dispute regarding the cure amount for an assumed contract or lease, the Buyer shall make any required payments as soon as practicable after entry of a final order resolving the dispute.

28. The Debtor requests the Court require objections, if any, to the proposed sale, including objections to the Debtor's proposed assumption and assignment of contracts and leases and the proposed cure amounts and adequate assurances of future performance, (a) be in writing; (b) state with specificity the nature of the objection and the alleged cure amount; (c) include any documentation supporting the alleged cure amount; and (d) be filed with the Court and served on counsel to the Debtor (Tucker Hester Baker & Krebs, LLC, Attn: David R. Krebs or Courtney E. Chilcote, One Indiana Square, Suite 1600, Indianapolis, IN 46204), counsel to the DIP Lender (Kroger Gardis Regas Attn: James Knauer or Jay P. Kennedy 111 Monument Circle, Suite #900, Indianapolis, IN 46204), counsel to the Committee, (Faegre Baker Daniels, LLP, Attn: Terry E. Hall, 300 North Meridian Street, Suite 2700, Indianapolis, Indiana 46204), and counsel to the United States Trustee (Office of the United States Trustee, Attn: Charles R. Wharton, 101 E. Ohio Street, Indianapolis, IN 46204) at least two (2) business days before the Sale Hearing. The Debtor requests that any counterparty to an assumed contract or lease who fails to timely file an objection in accordance with this paragraph be deemed to consent to the assumption and assignment of its lease or contract on the terms proposed by the Debtor.

29. Except as otherwise provided in the Qualified PA, the Debtor requests that the holder of the Successful Bid have ten (10) days following the Court's resolution of any disputes with respect to assumed contracts and leases to determine whether a contract or lease will be assumed and assigned.

12

### Effect of the Transaction

30. Following the Sale Hearing, the Debtor requests that the Court enter the Sale Order. Among other things, the Sale Order will approve the form and manner of notice of the sale, authorize the Debtor to enter into the successful Qualified PA, approve the Debtor's assumption and assignment of the Assumed Contracts and Leases, and direct the Debtor, the Buyer, and all parties in interest to take steps reasonably necessary to effectuate the successful Qualified PA.

### Relief Requested

31. Based on the foregoing, the Debtor respectfully requests that the Court approve the bidding procedures outlined herein and schedule a hearing on the Sale Motion as addressed herein.

32. Furthermore, the Debtor respectfully requests that the Court waive the fourteen (14) day stay provided in Rule 6004 so as to allow the Closing to occur as expeditiously as possible.

33. Section 363(b)(1) of the Bankruptcy Code provides that a trustee may sell property of the estate outside of the ordinary course of business after notice and a hearing. Section 105(a) of the Bankruptcy Code provides that the Court may enter such orders as are necessary or appropriate to carry out the provisions of the Bankruptcy Code.

34. Authorizing the bidding procedures outlined herein furthers the interests of the Debtor and its creditors. Hopefully, these procedures will not only produce a buyer that will offer the highest and best price for the Proposed Sale

Assets but also provide the Debtor with a bidder who will continue the Debtor's business.

WHEREFORE, the Debtor respectfully requests the entry of an Order: (1) approving the bidding procedures outlined herein, or as otherwise presented at the hearing on this Bid Procedures Motion related to an acceptable stocking horse bid; (2) approving the Bid Deadline and date for Auction presented herein, or as otherwise presented at the hearing on this Bid Procedures Motion related to an acceptable stocking horse bid; (3) scheduling the Sale Hearing promptly following the Auction or otherwise as soon as practicable after the Auction; and (4) granting the Debtor such other and further relief as the Court deems proper.

          Respectfully submitted

          TUCKER HESTER BAKER & KREBS, LLC

By:     */s/ Courtney E. Chilcote*
        David R. Krebs
        Courtney E. Chilcote
        Tucker Hester Baker & Krebs, LLC
        One Indiana Square, Suite 1600
        Indianapolis, IN 46204
        Tel: (317) 833-3030
        Fax: (317) 833-3031
        Email: dkrebs@thbklaw.com
        Email: cchilcote@thbklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2013, a copy of the following was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system:

- Stephen Kirk Andrews - bankruptcy@bbanda.com
- Kay Dee Baird - kbaird@kdlegal.com, pdidandeh@kdlegal.com
- Dustin R. DeNeal - dustin.deneal@faegrebd.com, sandy.engle@faegrebd.com, sarah.herendeen@faegrebd.com
- Terry E. Hall - terry.hall@faegrebd.com, sharon.korn@faegrebd.com, sarah.herendeen@faegrebd.com
- Robert Francis Hunt - hunt@huntlawfirm.net, dshell@huntlawfirm.net
- Jay P. Kennedy - jpk@kgrlaw.com, tfroelich@kgrlaw.com, ads@kgrlaw.com, jli@kgrlaw.com
- James A. Knauer - jak@kgrlaw.com, tjf@kgrlaw.com
- Gary H Leibowitz - gleibowitz@coleschotz.com, jdonaghy@coleschotz.com, pratkowiak@coleschotz.com
- Michael K. McCrory - mmccrory@btlaw.com, bankruptcyindy@btlaw.com
- C Daniel Motsinger - cmotsinger@kdlegal.com, cmotsinger@kdlegal.com, crbpgpleadings@kdlegal.com, rhobdy@kdlegal.com
- Mark R. Owens - mowens@btlaw.com, mark.owens@btlaw.com, bankruptcyindy@btlaw.com, pgroff@btlaw.com
- Robert H. Scott - robert.scott@akerman.com
- Chad J. Sullivan - cjsullivan@jacksonkelly.com
- Jonathan David Sundheimer - jsundheimer@btlaw.com
- U.S. Trustee - ustpregion10.in.ecf@usdoj.gov
- Charles R. Wharton - Charles.R.Wharton@usdoj.gov

I further certify that on December 6, 2013, a copy of the foregoing was mailed by first-class United States Postal Service, postage pre-paid, and properly addressed to the following:

All Creditors and Parties in Interest listed on Exhibit "A" attached hereto.

                                          */s/ Courtney E. Chilcote*
                                          David R. Krebs
                                          Courtney E. Chilcote