

**Redwine Management Company, Inc.**
4131 North Central Expressway, Suite 448
Dallas, Texas 75204

December 18, 2013

Ron Hutchcraft, President
Lily Group, Inc.
103 North Court Street
Sullivan, IN 47882

RE:  Offer to Purchase Assets pursuant to Section 363 of the United States Bankruptcy Code

Dear Mr. Hutchcraft:

Redwine Management Company, Inc. ("Redwine") hereby proposes to purchase certain assets of the Lily Group, Inc. ("Lily" or "Lily Business"). We understand those assets are available for sale through procedures and proceedings of the Bankruptcy Court in the Chapter 11 Case Number 13-81073-FJO-11. Accordingly, this proposal is offered pursuant to the following terms, subject to approval of the United States Bankruptcy Court. This proposal and offer is further subject to Redwine receiving the protections available under Bankruptcy Code Section 363.

1. <u>Consideration</u>.

Redwine would pay a purchase price of $9,000,000 in cash at the Closing (as defined below). Additionally, Redwine offers (i) a production payment of $2.00 per ton for each of the first 40,000 tons per month sold from the IV Seam, plus (ii) a production payment of $1.00 per ton for each ton over 40,000 tons per month sold from the IV Seam, plus (iii) a production payment of $1.00 per ton sold from the III Seam. All production payments apply to coal sold from the mine through December 31, 2025, unless as of that date Redwine paid less than $9,000,000 of total production payments, in which case Redwine would continue to pay production payments until the earlier of (i) payment by Redwine of not less than a total of $9,000,000 in production payments, or (ii) the saleable coal resources transferred to Redwine pursuant to this proceeding are exhausted. The cash at Closing plus the production payments would constitute the "Purchase Price". If Redwine assumes any liabilities of the Lily Business, including but not limited to cure payments, the Purchase Price may be reduced by a corresponding amount. Additionally, the purchase price would be adjusted by deducting any deposit amount submitted by Redwine.

2. <u>Assets</u>.

Redwine would acquire all, or substantially all, of the assets of Lily pursuant to Sections 363 and 365 of Chapter 11 of the United States Bankruptcy Code. The purchased assets would



EXHIBIT A

include, but not be limited to, all coal leaseholds, real property (including mineral rights) and improvements, permits, all contractual rights, the preparation plant, all equipment, all leases, all coal sales contracts, tools, furniture, vehicles, inventory, books and records, all intellectual property, goodwill, permits, licenses, accounts receivable, notes receivable, insurance proceeds, other intangible property owned by Lily or used in the Lily Business, and all other assets, rights or interest of Lily owned or used in connection with the Coal Estate which are not specifically excluded from the sale (hereinafter "Coal Estate").

3.  Due Diligence.

From the date hereof and continuing through the Closing, Redwine and/or its representatives, consultants, etc., may inspect all aspects of the Lily Business, including but not limited to financials, contracts, assets, permits and relations with regulators, and all documents related to the Coal Estate. Lily, and its employees, consultants, etc., will fully cooperate with Redwine in its due diligence efforts.

4.  Definitive Agreement.

The terms of the Definitive Agreement will include, but not be limited to, provisions for approval by the United States Bankruptcy Court; the conditions to Closing, including those set forth below; sale and purchase price terms; provisions setting forth liabilities to be assumed; certain representations of Lily regarding the Coal Estate; provisions permitting Redwine to exclude any Lily property from the Assets; provisions for appropriate Break-Up fee; and provisions for Lily to file appropriate documents with certain regulatory agencies for the transfer of applicable permits as soon as possible after Closing.

5.  Pre-Closing Agreement.

Lily agrees that upon acceptance of this proposal and prior to Closing, Lily will:

A.  Continue the maintenance of the Coal Estate in its current condition, including all equipment, facilities, vehicles, fixtures and other items of personal property that may be used by Redwine and reasonably contemplated to be delivered at Closing, subject to ordinary wear and tear;

B.  Not sell, lease, place liens upon, suffer liens upon or otherwise encumber the Coal Estate without prior written consent of Redwine;

C.  Except as may be permitted by the Bankruptcy Court, comply in all material respects with all federal, state or local laws, ordinances and regulations applicable to the use or ownership of the Coal Estate until the expiration or rejection of this proposal's terms or Closing;

    D.    Maintain casualty insurance on all property in at least the current amounts of coverage and insure all newly acquired property at an amount sufficient to repair or replace it if there is a loss;

    E.    Except as provided by terms of the Bankruptcy Code applicable to its debtor in possession status, timely make all payments and perform all obligations required by leases, and other agreements which pertain to the Coal Estate or otherwise perform as may be required under all such agreements;

    F.    Not enter into any contract to sell coal from the coal mine for delivery after Closing without the consent of Redwine; and

    G.    Not acquire or dispose of, or contract to acquire or dispose of, any equipment, supplies or services for the coal mine other than in the normal course of operations.

    H.    Use its best efforts, in cooperation with the Redwine, to transfer assets that are subject to this proposal.

6.    <u>Closing</u>.

Redwine's obligation to close is conditioned upon satisfactory compliance with the following provisions. Closing will occur as soon as reasonably practical after approval of the Definitive Agreement by the Bankruptcy Court and the same becomes a final, nonappealable order.

    A.    Approval of the Definitive Agreement by the United States Bankruptcy Court;

    B.    Delivery of the executed Definitive Agreement and other related documentation;

    C.    Consents and/or approvals of governmental agencies, lessors and other third parties, including all necessary permits required for the ownership, possession and operation of the business; however, transfer of mining permits from the Mine Safety and Health Administration (MSHA) and the Indiana Department of Natural Resources (IDNR) may occur after Closing, so long as Redwine is entitled to operate the mine under the existing permits until such permits are transferred to Redwine;

    D.    An order approving the sale of the Coal Estate from the United States Bankruptcy Court in form and substance satisfactory to Redwine, with provisions including, but not limited to, customary protections for Redwine regarding title to the Coal Estate being free and clear of all liens, claims, and encumbrances under the Bankruptcy Code, and designating Redwine as a good faith purchaser of the Assets;

    E.    Satisfactory results from due diligence investigations, including but not limited to discussions and/or agreements with Indianapolis Power & Light, MSHA and IDNR, within thirty (30) days after the date of entry of the Bid Procedures Order;

Ron Hutchcraft, President
Lily Group, Inc
December 18, 2013

    F.    Such other documents as may reasonably be required to consummate the transaction contemplated by this proposed agreement; and

    G.    Satisfactory funding commitments to Redwine including, but not limited to, the Purchase Price.

    I.    Redwine may waive any condition specified herein if it executes a writing so stating at or prior to the Closing.

7.    <u>Procedures Upon Acceptance Of Proposal</u>.

As consistent with the procedures ordered by the court for the sale of the assets of Lily, Redwine and Lily agree to the following:

    A.    Immediately upon acceptance of this proposal, the parties will proceed in good-faith to consummate a Definitive Agreement. Upon reaching the terms of a Definitive Agreement, and its execution, Lily will file with the Bankruptcy Court a motion, supporting papers and proposed order, in the form and substance satisfactory to Redwine, seeking approval of Redwine as the stalking horse. Time is of the essence.

    B.    In the event no objection to the Definitive Agreement is made, or if such objections are overruled, Lily will immediately obtain entry of an order approving the sale of the Coal Estate. Unless otherwise agreed by the parties, Lily agrees to use its best efforts to obtain approval of the Definitive Agreement within thirty (30) days after the motion to approve such Definitive Agreement has been filed with the Bankruptcy Court.

    C.    In the event Lily does not obtain and deliver an appropriate order approving the Definitive Agreement, then Redwine may, but is not obligated to, and at its sole discretion, terminate the Definitive Agreement without further obligation to Lily or any third party, nor will Redwine be liable to any third party for any damages whatsoever.

    D.    After execution of the this agreement and approval thereof by the court, if Redwine complies with the terms and conditions therein, and Redwine is willing and able to timely close the transaction to which it agreed, and Redwine has not defaulted under The Definitive Agreement, and, notwithstanding such readiness on behalf of Redwine, the Coal Estate is sold to another party, then (i) Redwine will be entitled to payment from the Chapter 11 Debtor of Two Hundred and Twenty Five Thousand Dollars ($225,000.00), as a "Break-Up Fee"; (ii) Redwine will be entitled to refund of any payments previously made pursuant to any terms of this or the Definitive Agreement; and (iii) such Break-Up Fee and refund will be paid to Redwine as a priority administrative claim in the Chapter 11 Bankruptcy Case. Further, if after execution of this agreement, Lily and/or the Bankruptcy Court entertains a competing offer for the Coal Estate, such competing offer must exceed Redwine's offer by no less than Three Hundred Twenty-Five Thousand Dollars ($325,000). Finally, if Redwine is selected as the

winning bidder and its bid is approved by the court, it will post a $100,000 deposit with the court, such deposit to be offset against the portion of the Purchase Price paid at Closing or retained by Lily if Redwine does not close on the purchase of the assets.

8. <u>Miscellaneous</u>.

    A. Except as may be required by order of the Bankruptcy Court, or other controlling law, no disclosure of the terms of the proposed transaction will be made by Lily, its consultants, or other stakeholders from the date hereof until the date upon which the order approving the Definitive Agreement becomes a final, nonappealable order. Notwithstanding the above, a copy of this agreement may be included in a motion filed with the court to approve Redwine as the stalking horse.

    B. Except for the terms of Sections 7 and 8 of this proposal, this agreement does not constitute a legally binding contract, nor an offer to enter into a legally binding contract. Sections 7 and 8 of this proposal are legally binding upon Redwine and Lily and will survive the termination of this agreement.

    C. Each party will pay its own expenses, including but not limited to, the cost for attorneys, financial advisors and consultants.

    D. Any amendment or modification of this proposal must be in writing and signed by the parties.

    E. This proposal constitutes the entire agreement and supersedes all prior agreements and undertakings, both written and oral, among the parties, with regard to the subject matter hereof.

    F. This proposal, and any subsequent agreement, will be governed by, and construed in accordance with, the internal laws of the State of Delaware, without regard to conflicts of laws principles.

    G. Nothing in this proposal will be construed to (i) make either party the agent of the other party for any purpose whatsoever, (ii) authorize either party to enter into any contract or assume any obligation on behalf of the other party, or (iii) establish a partnership, franchise, joint venture or fiduciary relationship between the parties.

    H. Redwine may assign its rights under this proposal or the Definitive Agreement to any entity which will assume its obligations hereunder, whether now existing or hereafter formed, without the consent of Lily.

    I. Unless otherwise agreed in writing, no person or entity will be third-party beneficiaries to the terms of this proposal or the Definitive Agreement as it is mutually agreed

Ron Hutchcraft, President
Lily Group, Inc
December 18, 2013

that this proposal and the Definitive Agreement are entered into only for the benefit of Redwine and Lily.

J.   This proposal may be executed in one or more counterparts, each of which will be deemed to be an original, all of which taken together will constitute one and the same agreement.

K.   Redwine and Lily acknowledge that they have been advised and represented by counsel in the negotiation, execution and delivery of this proposal.

9.   Waiver Of Jury Trial.

REDWINE AND LILY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THE TERMS OF THIS PROPOSAL AND ANY SUBSEQUENT AGREEMENT.

If the above-mentioned terms of the proposal are acceptable, please execute this document below. Upon such execution, Lily will be deemed to accept such terms as outlined herein and the parties will have reached an agreement thereby. Accordingly, please so indicate below and return a signed copy to Redwine by facsimile at (812) 962-2255, which will constitute notice of Lily's response to the proposal. If this proposal is not executed by Lily and returned to Redwine by 5:00 p.m. Central Time, on December 20, 2013, this offer will expire and be withdrawn and held for naught.

Sincerely,

REDWINE MANAGEMENT COMPANY INC
By: _____
L. Keller Smith, Vice President

Agreed this 20th day of December, 2013, by:

LILY GROUP, INC
By: _____ , PRES LGI
Ron Hutchcraft, President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LILY GROUP, INC., | ) | CASE NO. 13-81073-FJO-11 |
| | ) | |
| Debtor. | ) | |

## ORDER APPROVING SELECTION OF STALKING HORSE, BREAK-UP FEE AND RELATED RELIEF IN CONNECITON WITH SALE OF ASSETS OF DEBTOR LILY GROUP, INC.

This matter came before the Court upon the Debtor's *Motion Approving Selection of Stalking Horse, Break-Up Fee and Related Relief in Connection with Sale of Assets of Debtor Lily Group, Inc.* ("Motion to Establish Stalking Horse") filed on January 2, 2014, by the above-captioned debtor and debtor-in-possession (the "Debtor"), for entry of an order pursuant to sections 105 and 363 of the Bankruptcy Code, among other things, approves the selection of Redwine Management



EXHIBIT B

Company, Inc. ("Redwine") as stalking horse bidder for substantially all of the Debtor's assets pursuant to the terms of the Redwine Agreement, and thereby approve the Break-Up Fee, and approve the Overbid;

And notice of the Motion to Establish Stalking Horse being sufficient and no further notice needing to be given; and the Debtor having articulated good and sufficient reasons for granting the Motion to Establish Stalking Horse; and after due deliberation, and sufficient cause appearing thereof, it is hereby

ORDERED that the Motion to Establish Stalking Horse is hereby granted to the extent set forth herein; and it is further

ORDERED that the Redwine is approved as the stalking horse bidder for the purchase of substantially all of the Debtor's assets upon the terms and conditions of the Redwine Agreement; and it is further

ORDERED that the Break-Up Fee, as requested in the Motion to Establish Stalking Horse and upon the terms and conditions of the Redwine Agreement is approved, and the Debtor is authorized to pay Redwine the Break-Up fee in the amount of $225,000 as an administrative priority claim in the event of a sale to another bidder; and it is further

ORDERED that the Overbid is approved, and any further initial bid for the purchase of substantially all of the Debtor's assets must exceed Redwine's offer by no less than $325,000.00; and it is further

ORDERED that the Bid Order previously entered by this Court is otherwise unaffected by this Order; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing; and it is further

ORDERED that the Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**ORDERED that order shall be read in conjunction with the <u>Amended Order Granting Motion to Establish Bidding Procedures for the Sale of Substantially all the Assets of Lily Group, Inc. and Establishing Auction and Hearing Dates</u>.**

# # #